UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JACQUETTA A. NEALON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 23 C 16487 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL 700, | ) ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

After Plaintiff Jacquetta A. Nealon resigned from her position as a correctional officer because she did not consistently get time off to observe her Sabbath, she filed this employment discrimination suit against Defendant International Brotherhood of Teamsters, Local 700 (the "Union") alleging religious discrimination. Nealon claims that the Union violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, by failing to advocate for and actively preventing her requested religious accommodation. The Union moves to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), or, in the alternative, for failure to state a claim pursuant to Rule 12(b)(6). Whilie the Court finds it has subject matter jurisdiction over the case, the Court grants the Union's motion to dismiss because Nealon has not plausibly alleged that the Union engaged in religious discrimination under any theory of liability.

# BACKGROUND[1]

Nealon belongs to a religious organization known as Israel of God. Israel of God observes the Sabbath from sundown on Friday to sundown on Saturday, as well as Biblical holidays like Passover. Nealon worked as a correctional officer in the County of Cook, Illinois, and belonged to the Union in connection with that job.[2] The Union is a labor organization that represents a bargaining unit of employees employed by the County. Among its various functions, the Union may advocate on behalf of its members for requested religious accommodations.

In 2019, Nealon started requesting time off to allow her to observe the Sabbath, but the County did not honor these requests. Not only did the Union fail to advocate for Nealon's time off requests, but it also prevented her from receiving her requested religious accommodation. Subsequently, Nealon resigned from her position in November 2021. Nealon then filed this lawsuit on December 5, 2023.

---

[1] The Court takes the facts in the background section from Nealon's amended complaint and presumes them to be true for the purpose of resolving the Union's motion to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013) (Rule 12(b)); *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995) (Rule 12(b)(1)). Although the Court normally cannot consider extrinsic evidence without converting a motion to dismiss into one for summary judgment, *Jackson v. Curry*, 888 F.3d 259, 263 (7th Cir. 2018), the Court may consider "documents that are central to the complaint and are referred to in it" in ruling on a motion to dismiss, *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). The Court "may also take judicial notice of matters of public record." *Orgone Cap. III, LLC v. Daubenspeck*, 912 F.3d 1039, 1043–44 (7th Cir. 2019). The Union asks the Court to consider certain documents it attaches to its motion to dismiss. The Court addresses this request in the analysis section.

[2] Nealon mistakenly refers to herself as a former employee of the Union in the amended complaint. Doc. 10 ¶ 7. However, she clarifies in her response to the motion to dismiss that she was not an employee of the Union and instead alleges religious discrimination against the Union as a labor organization under 42 U.S.C. § 2000e(e). Doc. 15 at 3. Because the parties' briefs set forth arguments assuming the Union was either Nealon's joint employer or a labor organization, the Court finds that Nealon's mistake does not prejudice the Union and addresses the merits of the parties' arguments.

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(1) challenges the Court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The standard of review for a Rule 12(b)(1) motion to dismiss depends on whether the defendant raises a facial or factual challenge. *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). If, as here, a defendant challenges the sufficiency of the allegations regarding subject matter jurisdiction—a facial challenge—the Court "must accept all well-pleaded factual allegations as true and draw all reasonable inferences" in the plaintiff's favor. *Id.* "[W]hen evaluating a facial challenge to subject matter jurisdiction," the Court employs the *Twombly–Iqbal* "plausibility" standard, "which is the same standard used to evaluate facial challenges to claims under Rule 12(b)(6)." *Id.* at 174.

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

ANALYSIS

I.    **Illinois Labor Relations Board Proceeding**

The Union argues that Nealon cannot bring her Title VII claim against it because Nealon previously filed a charge with the Illinois Labor Relations Board ("ILRB") alleging unfair labor practices within the meaning of the Illinois Public Labor Relations Act ("IPLRA"), 5 Ill. Comp. Stat. 315/11 (2014), which the ILRB dismissed. The Union raises two arguments involving this previous proceeding. First, the Union argues that this Court does not have subject matter jurisdiction because the ILRB "has exclusive jurisdiction to hear unfair labor practice grievances—including breach of a union's duty of fair representation—of Illinois public employees like [Nealon]." Doc. 14 at 12. Second, the Union argues that the ILRB's dismissal of Nealon's unfair labor practices charge precludes this suit. The Court addresses each argument in turn.

The Union first challenges this Court's subject matter jurisdiction over Nealon's claim. In support, the Union cites cases that describe the ILRB's exclusive jurisdiction to hear unfair labor practice grievances and claims alleging breach of the duty of fair representation brought by public employees. *See Carver v. Nall*, 172 F.3d 513, 516 (7th Cir. 1999); *Stahulak v. City of Chicago*, 291 Ill. App. 3d 824, 830–31 (1997); *Foley v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31, Loc. No. 2258*, 199 Ill. App. 3d 6, 10–11 (1990); *Flowers v. City of Chicago*, No. 18 C 7003, 2019 WL 1932587 (N.D. Ill. May 1, 2019). The Union also cites authority to contend that the ILRB's final administrative decisions are appealable only to the Illinois Appellate Court, not this court. *See Foley*; 199 Ill. App. 3d at 10–11; 5 Ill. Comp. Stat. Ann. 315/9. However, in this suit, Nealon does not bring an unfair labor practice grievance or a claim alleging breach of the duty of fair representation, nor does she seek to appeal the ILRB's

4

dismissal. Instead, she brings a new claim for religious discrimination under federal civil rights law. Importantly, the ILRB "is not empowered to hear a civil rights claim." *Carver*, 172 F.3d at 516. Therefore, the Court finds that it has subject matter jurisdiction over Nealon's claim. Accordingly, the Court denies the Union's motion to dismiss pursuant to Rule 12(b)(1).

The Union next argues that Nealon's ILRB charge precludes her federal claim. To show that the ILRB's dismissal definitively precludes Nealon's allegations in this case, the Union must demonstrate that claim preclusion (*res judicata*), issue preclusion (collateral estoppel), or some other theory of estoppel applies. *See Allen v. McCurry*, 449 U.S. 90, 94 (1980) (explaining that the doctrines of *res judicata* and collateral estoppel preclude parties from relitigating issues in certain circumstances); *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1081–83 (7th Cir. 1997) (finding that the district court erred in relying upon a court finding from an earlier case to dismiss the plaintiff's claim under Rule 12(b)(6) and noting that the court could not "achieve through judicial notice what it cannot achieve through collateral estoppel"). The Union, however, does not specify in its motion to dismiss which theory of preclusion applies. Instead, the Union states generally that Nealon "has already filed a charge, and the ILRB has already dismissed that charge, alleging that the Union engaged in unfair labor practices within the meaning of the [IPLRA] for the same issues that [Nealon] has filed in this complaint." Doc. 14 at 13. The Union argues that, consequently, its "unfair labor practices and any implied allegations of unfair representation . . . have been subject to a comprehensive and exclusive scheme of remedies, administrative procedures, and judicial review." *Id.* Nealon responds that it would be improper to dismiss the amended complaint at this stage because Nealon did not refer to the ILRB proceedings in her amended complaint "and therefore has not plead[ed] herself out of court." Doc. 15 at 6.

5

As a general matter, preclusion arguments made in motions to dismiss are premature. That is because preclusion arguments are "an affirmative defense[,] and the plaintiff need not plead around affirmative defenses" to state a claim. *Phillips v. Baxter*, No. 16-cv-08233, 2020 WL 2197842, at *3 (N.D. Ill. May 6, 2020). Consequently, "[u]nless the complaint itself admits the elements of an affirmative defense, it is improper to dismiss it under Rule 12(b)(6) even when that affirmative defense relies on facts otherwise subject to judicial notice, such as preclusion." *Allison W. v. Oak Park & River Forest High Sch. Dist. #200*, 193 F. Supp. 3d 894, 899 (N.D. Ill. 2016). Still, because a plaintiff "may plead himself out of court by alleging (and thus admitting) the ingredients of a defense," preclusion "may properly be raised as a basis to dismiss a complaint pursuant to Rule 12(b)(6) where the instant complaint opens the door by referencing prior proceedings that form the basis for applying the doctrine." *Phillips*, 2020 WL 2197842, at *3 (quotation marks omitted). Here, Nealon did not "open the door" by referencing her ILRB proceeding in her amended complaint.[3] Accordingly, Nealon has not pleaded herself out of court by admitting "the ingredients of a [preclusion] defense," and so the Court will not dismiss the amended complaint pursuant to Rule 12(b)(6) on preclusion grounds. *Id.*

**II.    Timeliness**

The Union also argues that the Court should dismiss Nealon's Title VII claim because she did not timely file it. Title VII provides that a person alleging employment discrimination

---

[3] A "district court may [ ] take judicial notice of matters of public record without converting a 12(b)(6) motion into a motion for summary judgment." *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994). "When a defendant raises [preclusion] as a defense and it is clear from the complaint's face and matters of which the district court may take judicial notice, that the plaintiff's claims are barred as a matter of law, dismissal under Rule 12(b)(6) is proper.'" *Clark & Leland Condo, L.L.C. v. Northside Cmty. Bank*, 110 F. Supp. 3d 866, 868–69 (N.D. Ill. 2015) (internal alterations omitted) (quoting *Arthur Anderson LLP v. Fed. Ins. Co.*, No. 06 C 1824, 2007 WL 844632, at *7 (N.D. Ill. Mar. 16, 2007)). However, the Court cannot find the ILRB's dismissal opinion in the public record, the Union has not asked this Court to take judicial notice of it, and the Court may not properly consider the ILRB's dismissal opinion as attached to the Union's motion to dismiss because Nealon did not reference it in her amended complaint. *See Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir.1994).

must file a charge with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the alleged unlawful employment practice in deferral states like Illinois. 42 U.S.C. § 2000e-5(e)(1); *see Mohasco Corp. v. Silver*, 447 U.S. 807 (1980); *Roney v. Ill. Dep't of Transp.*, 474 F.3d 455, 460 (7th Cir. 2007). The Union contends that Nealon did not properly file a charge within 300 days of the alleged unlawful employment practice, insisting that Nealon's claim arose in 2019 when she allegedly requested time off to observe the Sabbath, the County did not honor those requests, and the Union failed to aid in and prevented Nealon's requests. In response, Nealon argues that although the discrimination commenced in 2019, she was subject to a hostile work environment that continued through the end of her employment in November 2021.[4]

While Title VII's statute of limitations is an affirmative defense, *see* Fed. R. Civ. P. 8(c)(1), a court may dismiss a claim if "the allegations of the complaint itself set forth everything necessary to satisfy [an] affirmative defense.'" *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (quoting *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005). Here, for the Union's statute of limitations argument to succeed, the date on which Nealon filed a charge of discrimination against the Union with the EEOC must be properly before the Court. Although the amended complaint does not contain that date, the Union asks the Court to consider Nealon's original complaint and its attachments in deciding whether she timely filed her case. But the amended complaint is the controlling pleading, *see Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n.1 (7th Cir. 2004) ("It is axiomatic that an amended complaint supersedes an original complaint and renders the original complaint void."), and Nealon does not reference the

---

[4] In her amended complaint, Nealon alleges that she resigned in November 2021. Doc. 10 ¶ 17. Contrarily, in her response brief, Nealon states that her employer terminated her employment. Doc. 15 at 6. The Court acknowledges this factual discrepancy but, for the timeliness analysis, considers generally that Nealon's employment ended in November 2021.

original complaint in her amended complaint. *See Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir.1994) ("[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim."). Therefore, the Court cannot properly consider the original complaint or its attachments—the only documents the Union cites to support its timeliness argument—when ruling on a Rule 12(b)(6) motion.[5] Consequently, without anything properly before the Court that lists the date on which Nealon filed her EEOC charge, the Court cannot find Nealon's claim time-barred.[6] *See George v. Kraft Foods Glob., Inc.*, 674 F. Supp. 2d 1031, 1042–44 (N.D. Ill. 2009) (finding ERISA's three-year statute of limitations did not bar plaintiffs' claims at the motion to dismiss stage where plaintiffs' complaint failed to set forth everything necessary to satisfy defendants' affirmative defense).

### III. Sufficiency of the Allegations

The Union argues that the Court should dismiss the case because Nealon failed to plead the elements necessary to establish any theory of liability against the Union. Specifically, the Union contends that Nealon fails to state a claim against the Union as either her (1) joint employer or (2) labor organization.

---

[5] In her original complaint, Nealon attached the right to sue letter that she received from the EEOC. Doc. 1. While she does not attach this letter to her amended complaint, Nealon references the letter in the amended complaint, Doc. 10 ¶ 18, such that the Court may properly consider it. However, the right to sue letter does not state the date on which Nealon originally filed her charge with the EEOC.

[6] Even if the Court could properly consider the original complaint, the Court is confused by the Union's statement that Nealon filed her charge with the EEOC on August 1, 2022. See Doc. 14 at 14–15 (Nealon's "Charge of Discrimination filed with . . . the EEOC (*See Attachment 3*) is dated August 1, 2022."). The Union provides no pincite to where it found this date in Attachment 3 (which includes the original complaint and right to sue letter), and this Court does not see August 1, 2022 listed anywhere in these documents. Instead, the Court notes that Nealon, in her original complaint, listed March 22, 2022 as the date on which she filed a charge against the Union with the EEOC. Doc. 14-1 at 133.

A. **Joint Employer**

First, the Union argues that Nealon failed to plead the elements necessary to establish joint employer liability under Title VII. Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). To maintain a cause of action for discriminatory conduct under Title VII, a plaintiff must allege the existence of an employment relationship. *Knight v. United Farm Bureau Mut. Ins. Co.*, 950 F.2d 377, 380 (7th Cir. 1991). To determine whether the Union is a joint employer, the Court considers by the following factors:

> (1) the extent of the employers' control and supervision over the worker, including directions on scheduling and performance of work, (2) the kind of occupation and nature of skill required, including whether skills are obtained in the work place, (3) responsibility for the costs of operation, such as equipment, supplies, fees, licenses, workplace, and maintenance of operations, (4) method and form of payment and benefits, and (5) length of job commitment and/or expectations.

*Id.* at 378–79. This is a fact-intensive inquiry that typically requires further development through discovery. *See Piano v. Ameritech/SBC*, No. 02 C 3237, 2003 WL 260337, at *5 (N.D. Ill. Feb. 5, 2003) (considering joint employer theory at summary judgment stage); *Wright v. Barth Elec. Co.*, No. 1:09-CV-1202, 2011 WL 883645, at *10–11 (S.D. Ind. Mar. 11, 2011) (same).

Nealon alleged in her amended complaint that the Union was her employer. Doc. 10 ¶ 7. But she later retracted this allegation in her response brief to the motion to dismiss, admitting that the "County is, under the strictest definition, the Employer in this matter. The Amended Complaint made that clear but should have accurately labeled Defendant as a labor organization under 42 U.S.C. § 2000e(e)." Doc. 15 at 3. Yet, in the subsequent paragraphs, Nealon argues

9

that the Union was her joint employer under the *Knight* test. Specifically, she states that "[o]ne of the economic realities of employment under a collective bargaining agreement is that the unions frequently exercise great control over shift assignments," *id.* at 4, and she asks the Court to permit discovery to allow her to demonstrate that the Union exercised significant control over her shift assignments. *Id.* But Nealon's amended complaint lacks any allegation that references the Union as a "joint employer," a collective bargaining agreement, or the Union's control over her shift assignments. Instead, Nealon only alleges that "While Defendant's role is to advocate on behalf of Plaintiff and other employees, Defendant did not do this. To the contrary, Defendant actually acted to prevent Plaintiff from taking time off on the Sabbath." Doc. 10 ¶ 13. While this allegation suggests that the Union acted as an intermediary between Nealon and the County, it fails to suggest that the Union exercised any, much less "significant," control over her employment, and the caselaw indicates that any such theory would be unlikely. *See U.S. Equal Emp. Comm'n v. Foster Wheeler Constructors, Inc.*, No. 98 C 1601, 1999 WL 507191, at *8 (N.D. Ill. July 6, 1999) ("Neither the EEOC nor this court could locate any case law applying the joint employer theory . . . to a labor union."). The amended complaint otherwise is devoid of any facts alleging that the Union controlled Nealon's working conditions, assignments, evaluations, or performance. *See Wilcox v. Allstate Corp.*, No. 11 C 814, 2012 WL 6569729, at * 11–12 (N.D. Ill. Dec. 17, 2012) (finding no joint employer relationship where defendant did not supervise plaintiff, direct or control plaintiff's assignments, provide plaintiff feedback, or process plaintiff's requests for time off). Accordingly, the allegations in the amended complaint cannot withstand a Rule 12(b)(6) motion under the joint employer theory of liability.

10

B.     Labor Organization

Additionally, the Union argues that Nealon failed to plead the elements necessary to establish liability against the Union as a labor organization under Title VII, 42 U.S.C. § 2000e(e).  Specifically, the Union contends that the amended complaint fails to allege any facts to make an initial showing of a Title VII violation because, among other things, "she does not allege that she even sought to file a grievance or requested that the Union take any action on her behalf."  Doc. 14 at 11.  In response, Nealon asserts that the amended complaint "explicitly states that Defendant ratified and encouraged the discrimination, and that its encouragement made it more difficult for Plaintiff to be accommodated."  Doc. 15 at 5.

Title VII makes it unlawful for a labor organization to "exclude or expel from its membership, or otherwise discriminate against, any individual because of his race, color, religion, sex, or national origin," or "to cause or attempt to cause an employer to discriminate against an individual in violation of this section."  42 U.S.C. § 2000e-2(c)(1), (3).  A union is liable under Title VII if it "discriminates in the performance of its agency function."  *EEOC v. Pipefitters Ass'n Loc. Union 597*, 334 F.3d 656, 659 (7th Cir. 2003).  Importantly, a union's agency function includes pursuing grievances on behalf of its members.  *Id.* at 660.  Unions are liable for their own conduct and can "become liable for others' discriminatory conduct 'only if they know (or ought to know) what is going on and choose to do nothing (or select ineffectual steps when better ones are available).'"  *Johnson v. Int'l Longshoreman's Ass'n, Loc. 815 AFL-CIO*, 520 F. App'x 452, 454 (7th Cir. 2013) (quoting *Maalik v. Int'l Union of Elevator Constructors, Loc. 2*, 437 F.3d 650, 653 (7th Cir. 2006)).  Failure to effectuate changes in the workplace does not necessarily establish union liability for discrimination—for example, if the

11

union urges an employer to eliminate discrimination and the employer fails to do so, the union is not liable for discrimination. *Pipefitters*, 334 F.3d at 659.

Here, Nealon alleges that she requested a religious accommodation from her employer, and the Union did not aid in her request and prevented her from receiving an accommodation—even though the Union helped other individuals, who were members of different religious organizations, with their accommodation requests. Certainly, a union's selective inaction can be a form of discrimination in violate of Title VII. *See id.* at 661 (stating that it would be "a clear violation of . . . Title VII" "[i]f a black worker asks the union to grieve a complaint, the union refuses, though if the worker were white the union would grieve his complaint"); *Green v. Am. Fed'n of Tchrs./Ill. Fed'n of Tchrs. Loc. 604*, 740 F.3d 1104, 1107 (7th Cir. 2014) ("If the union would have processed [the plaintiff's] grievance or represented him [in a lawsuit] had he been white . . . then the union violated Title VII."). But Nealon does not include any facts in the amended complaint to plausibly allege that the Union's action or inaction was for the purpose of discriminating on the basis of religion. She does not allege that she filed a grievance requesting the Union's assistance with her accommodation, nor does she allege that she asked for the Union's aid in any way. She also does not include any facts regarding her allegation that the Union acted to prevent her from receiving an accommodation. Instead, Nealon vaguely and conclusively alleges that the Union "did not attempt to aid" and "acted to prevent" her requested accommodation, Doc. 10 ¶¶ 13–14, which does not meet the plausibility standard. *Brooks*, 578 F.3d at 581 ("[A] court need not accept as true 'legal conclusions[, or t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" (quoting *Iqbal*, 556 U.S. at 663)). The Court therefore finds that Nealon has not sufficiently alleged a claim under the labor organization theory of liability.

Because Nealon failed to plausibly allege that the Union discriminated against her in violation of Title VII under either the joint employer or labor organization theories of liability, the Court dismisses the amended complaint.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the Union's motion to dismiss [14]. The Court dismisses Nealon's amended complaint [10] without prejudice.

Dated: February 24, 2025

_____
SARA L. ELLIS
United States District Judge