UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JACQUETTA A. NEALON, | ) |
| Plaintiff, | ) ) ) |
| | ) No. 23 C 16487 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL 700, | ) ) ) |
| Defendant. | ) ) |

**OPINION AND ORDER**

After Plaintiff Jacquetta A. Nealon resigned from her position as a correctional officer because she did not consistently get time off to observe her Sabbath, she filed this employment discrimination suit against Defendant International Brotherhood of Teamsters, Local 700 (the "Union") alleging religious discrimination. Nealon claims that the Union violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, by failing to advocate for and actively preventing her requested religious accommodation. The Court previously granted the Union's motion to dismiss Nealon's amended complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. 19. Nealon then filed a second amended complaint, Doc. 20, which the Union now moves to dismiss under Rule 12(b)(6).[1] Because Nealon still has not plausibly alleged that the Union engaged in religious discrimination, the Court dismisses her claim with prejudice.

---

[1] In the title and legal standard section of its motion, the Union mentions moving to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). However, the Union subsequently does not raise any arguments challenging this Court's subject matter jurisdiction, nor does it incorporate or otherwise reference its 12(b)(1) arguments from its first motion to dismiss. Accordingly, the Court does not address subject matter jurisdiction in this Opinion. *See Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 704 (7th Cir. 2010) ("[I]t is not this court's responsibility to research and construct the parties' arguments, and conclusory analysis will be construed as waiver." (citation omitted)).

## BACKGROUND[2]

Nealon belongs to a religious organization known as Israel of God. Israel of God observes the Sabbath from sundown on Friday to sundown on Saturday, as well as Biblical holidays like Passover. Nealon worked as a correctional officer in Cook County, Illinois, and belonged to the Union in connection with that job. The Union is a labor organization that represents a bargaining unit of employees employed by Cook County. Among its various functions, the Union may advocate on behalf of its members for requested religious accommodations and approve or deny its members' requested shift changes.

In 2019, Nealon started requesting time off and hardship exemptions to allow her to observe the Sabbath, but Cook County did not honor these requests. The Union failed to advocate for Nealon's time off requests and prevented her from receiving her requested religious accommodation because it did not aid Nealon in her requested shift changes. The Union aided other employees in getting shift changes for various hardships.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to

---

[2] As before, the Court takes the facts in the background section from Nealon's second amended complaint and presumes them to be true for the purpose of resolving the Union's motion to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013). Although the Court normally cannot consider extrinsic evidence without converting a motion to dismiss into one for summary judgment, *Jackson v. Curry*, 888 F.3d 259, 263 (7th Cir. 2018), the Court may consider "documents that are central to the complaint and are referred to in it" in ruling on a motion to dismiss, *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

I. **Sufficiency of the Allegations**

The Union argues that, even though Nealon has amended her complaint for a second time, she yet again fails to state a claim against the Union as either her (1) joint employer or (2) labor organization.

A. **Joint Employer**

First, the Union argues that Nealon has failed to plead in her second amended complaint the elements necessary to establish joint employer liability under Title VII. Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). To maintain a cause of action for discriminatory conduct under Title VII, a plaintiff must allege the existence of an employment relationship. *Knight v. United Farm Bureau Mut. Ins. Co.*, 950 F.2d 377, 380 (7th Cir. 1991). To determine whether the Union is a joint employer, the Court considers the following factors:

> (1) the extent of the employers' control and supervision over the worker, including directions on scheduling and performance of work, (2) the kind of occupation and nature of skill required, including whether skills are obtained in the work place, (3) responsibility for the costs of operation, such as equipment, supplies, fees, licenses, workplace, and maintenance of operations,

3

>    (4) method and form of payment and benefits, and (5) length of job commitment and/or expectations.

*Id.* at 378–79.  This is a fact-intensive inquiry that typically requires further development through discovery.  *See Piano v. Ameritech/SBC*, No. 02 C 3237, 2003 WL 260337, at *5 (N.D. Ill. Feb. 5, 2003) (considering joint employer theory at summary judgment stage); *Wright v. Barth Elec. Co.*, No. 09-CV-1202, 2011 WL 883645, at *10–11 (S.D. Ind. Mar. 11, 2011) (same).

The Court previously determined that Nealon's amended complaint did not allege facts to support a joint employer theory of liability.  To address this shortcoming, Nealon added a sentence in her second amended complaint stating that the Union was her "joint employer inasmuch as it was responsible for [her] shift assignments."  Doc. 20 ¶ 8.  The Union argues that Nealon's second amended complaint, even with this additional allegation, still fails to allege sufficient facts to survive a motion to dismiss.[3]

The Court agrees with the Union.  When analyzing the *Knight* factors, the first factor—the extent of the defendant's control and supervision—is the most important consideration in ascertaining the existence of an employer-employee relationship.  *Love v. JP Cullen & Sons, Inc.*, 779 F.3d 697, 703 (7th Cir. 2015).  Within this factor, the "key powers" of a potential employer's control and supervision are hiring and firing.  *Id.*  Although Nealon's allegation that the Union was responsible for her shift assignments suggests that the Union exercised some control over her employment, Nealon does not allege that the Union had the key powers or influence to hire or fire her, or otherwise exercise "significant control."  *See Whitaker v. Milwaukee Cnty., Wis.*, 772 F.3d 802, 810 (7th Cir. 2014) (finding that "an entity other than the actual employer may be considered a 'joint employer' only if it exerted significant control over

---

[3] The Court notes that the Union attaches two collective bargaining agreements to its motion to dismiss to show that contrary to Nealon's allegation, the Union had no control over shift assignments.  *See* Doc. 23-1 at 1–238.  However, Nealon does not refer to these documents in its complaint and therefore the Court cannot properly consider them.  *Williamson*, 714 F.3d at 436.

4

the employee") (quoting *G. Heileman Brewing Co. v. NLRB*, 879 F.2d 1526, 1530 (7th Cir. 1989)) (emphasis and internal quotation marks omitted); *Johnson v. Menasha Packaging Co., LLC*, No. 19-CV-835-SMY, 2021 WL 1737321, at *4 (S.D. Ill. May 3, 2021) (finding the defendants "clearly did not have significant 'control' over the plaintiff because they "did not hire him, set his hours or his pay, assign him a work location, discipline or discharge him, or pay him" even though they retained certain discretionary power over him). Further, Nealon's second amended complaint remains devoid of any facts addressing the other four factors. Accordingly, the allegations in the amended complaint cannot withstand a Rule 12(b)(6) motion under the joint employer theory of liability. *See Budzyn v. KFC Corp.*, No. 21 C 4152, 2022 WL 952746, at *2–3 (N.D. Ill. Mar. 30, 2022) (finding that the plaintiff did not sufficiently allege that the defendant was her joint employer where she did not allege that it had the ability to hire, fire, or direct her work and noting that the plaintiff failed to allege any facts bearing on the *Knight* factors, such as the length of the job commitment); *cf. Shah v. Littelfuse Inc.*, No. 12 C 6845, 2013 WL 1828926, at *3–5 (N.D. Ill. Apr. 29, 2013) (dismissing defendant where allegations suggested it was only an intermediary between plaintiff and employer and did not exercise control over plaintiff's day-to-day work or play any role in decision to terminate plaintiff's employment).

      **B.**    **Labor Organization**

      Next, the Union argues that Nealon failed to plead the elements necessary to establish liability against the Union as a labor organization under Title VII, 42 U.S.C. § 2000e-2(c). Specifically, the Union argues that Nealon has failed to plead factual allegations sufficient to show that the Union was involved in or responsible for the alleged discrimination. In response, Nealon claims that it was sufficient she pleaded in her second amended complaint that the Union

5

"ratified and encouraged the discrimination, and that its encouragement made it more difficult for [Nealon] to be accommodated." Doc. 24 at 6.

Title VII makes it unlawful for a labor organization to "exclude or expel from its membership, or otherwise discriminate against, any individual because of his race, color, religion, sex, or national origin," or "to cause or attempt to cause an employer to discriminate against an individual in violation of this section." 42 U.S.C. § 2000e-2(c)(1), (3). A union is liable under Title VII if it "discriminates in the performance of its agency function." *EEOC v. Pipefitters Ass'n Loc. Union 597*, 334 F.3d 656, 659 (7th Cir. 2003). A union's agency function includes pursuing grievances on behalf of its members. *Id*. at 660. Unions are liable for their own conduct and can "become liable for others' discriminatory conduct 'only if they know (or ought to know) what is going on and choose to do nothing (or select ineffectual steps when better ones are available).'" *Johnson v. Int'l Longshoreman's Ass'n, Loc. 815 AFL-CIO*, 520 F. App'x 452, 454 (7th Cir. 2013) (quoting *Maalik v. Int'l Union of Elevator Constructors, Loc. 2*, 437 F.3d 650, 653 (7th Cir. 2006)). Failure to effectuate changes in the workplace does not necessarily establish union liability for discrimination—for example, if the union urges an employer to eliminate discrimination and the employer fails to do so, the union is not liable for discrimination. *Pipefitters*, 334 F.3d at 659.

The Court previously determined that Nealon failed to sufficiently allege a claim under the labor organization theory of liability because she did not include any facts in her first amended complaint to plausibly allege that the Union's action or inaction was for the purpose of discriminating on the basis of religion. *See* Doc. 19 at 12. While Nealon added some new facts to her second amended complaint, these facts fail to cure the deficiencies the Court earlier identified. Specifically, Nealon added allegations that she sought religious-based hardship

6

exemptions for her shift assignments, which were denied, but she does not allege that the Union denied these requests. Instead, her added facts only reiterate her conclusory assertion that the Union "did not aid her" and "prevented" her accommodation, as well as "ratified and encouraged" the purported discrimination. Doc. 24 at 6.

While a complaint does not need detailed factual allegations, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Nealon does not allege that she filed a grievance with the Union, asked for the Union's help in her requests, or that the Union had knowledge of Cook County denying her time off requests and failed to aid on the basis of her religion. She does not even allege that the Union knew of her religious affiliation. As such, nothing in the second amended complaint suggests that an animus against Nealon's religious beliefs motivated the Union's action or inaction. *See Webb v. AFSCME Council 31*, No. 01 C 4192, 2020 WL 5547914, at *2–3 (N.D. Ill. Sept. 16, 2020) (finding that the plaintiff "failed to plead particularized factual content that would allow the Court to reasonably infer the Union defendants are liable [for] race discrimination in relation to the filing of his grievances" because he "made no mention or inference of race discrimination"); *Lugo v. Int'l Bhd. of Elec. Workers Loc. #134*, 175 F. Supp. 3d 1026, 1037 (N.D. Ill. 2016) (dismissing the plaintiff's Title VII discrimination claim against the union defendant because he "failed to plead facts showing that [the union] denied his union applications or changed his classification on the basis of his race"). Accordingly, Nealon has not pleaded enough facts to give rise to the plausible inference that the Union discriminated against Nealon in carrying out its agency function, and Nealon cannot pursue her claim under the labor organization theory of liability.

7

## CONCLUSION

For the foregoing reasons, the Court grants the Union's Rule 12(b)(6) motion to dismiss [23]. Because the Court has given Nealon an opportunity to amend her complaint two times, including after granting the Union's first Rule 12(b)(6) motion to dismiss, the Court grants the present motion with prejudice.[4] *See Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008) ("[D]istrict courts have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile."). Civil case terminated.

Dated: September 22, 2025

SARA L. ELLIS
United States District Judge

---

[4] Because the Court grants the Union's motion to dismiss for failure to state a claim under Rule 12(b)(6) and dismisses Nealon's second amended complaint with prejudice, the Court does not address the Union's timeliness argument.